THE STATE EX REL. SMITH, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Smith v. Indus. Comm.*, 98 Ohio St.3d 16, 2002-Ohio-7035.]

*Workers' compensation — Receipt of both wages and total disability compensation for the same period — Claimant informs Bureau of Workers' Compensation of erroneous payments — No action taken by Industrial Commission — Commission's later termination of claimant's permanent total disability award and declaration that all compensation after June 1, 1992, to be overpaid as the result of fraud an abuse of discretion — Commission's continuing jurisdiction was not exercised within a reasonable time and was therefore improper.*

(No. 2002-0073 — Submitted November 13, 2002 — Decided December 20, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 01AP-272.

_____

**Per Curiam.**

{¶1}    Appellant-claimant, Okey C. Smith, was hurt on the job in 1977. In May 1992, he moved appellee Industrial Commission of Ohio for permanent total disability compensation ("PTD"). A previous award of temporary total disability compensation ("TTD") continued until it was terminated on August 23, 1993.

{¶2}    On September 9, 1993, claimant contacted appellee Bureau of Workers' Compensation and informed the bureau that it had erroneously paid him TTD for several periods between January and August 1993 when he had been attempting to return to gainful employment. The next day, he forwarded paycheck stubs and offered to repay any overpayment. For reasons unknown, the bureau did nothing.

{¶3}    The commission finally ruled on claimant's PTD application on August 23, 1995. During the two-year period between termination of TTD and his

PTD hearing, claimant intermittently attempted to work. Evidence of these attempts were contained several places in the commission's claim file. A vocational evaluation for the commission referred to short-term employment in 1993 and as recently as February 1994. That report also referred to "numerous involuntary job terminations," further demonstrating attempts at work. A March 27, 1995 report from Dr. John R. Scharf also recorded that claimant "apparently works to some degree as a nurse's aid[e] and he is a certified nurse's aid[e] in the nursing homes."

{¶4} On August 23, 1995, the commission awarded PTD. A synopsis of facts prepared for the adjudicator's review had the handwritten notation "13 jobs—1992." Despite the evidence before it as to claimant's prior job history, the commission nevertheless awarded PTD retroactively to August 24, 1993—covering periods in which it knew or should have known that claimant had worked. There is no evidence of any employment after these benefits were awarded.

{¶5} In 1999, comparison of bureau and employment services records indicated that claimant had concurrently received total disability compensation and wages for intermittent periods between 1992 and 1995. The bureau eventually found evidence of 15 jobs that claimant had performed during this time. The bureau moved for a declaration of overpayment.

{¶6} The commission complied with the bureau's request, ruling that all TTD and PTD paid after June 1, 1992, was overpaid. The commission declared that fraud had been committed and terminated further PTD. In a mandamus action brought by the claimant, the Court of Appeals for Franklin County found no abuse of discretion by the commission. Claimant has appealed here as a matter of right.

{¶7} At issue is claimant's receipt of total disability compensation—temporary and permanent—over periods of employment. While this is not a new topic for us, nothing about this controversy is typical.

{¶8} Previous cases have always featured claimants who were awarded total disability compensation, secured employment thereafter, and got caught. This claimant's receipt of TTD saw factors one and two, but not three. This claimant did

not get caught working and drawing compensation. Instead, *he* notified the bureau that it had improperly paid him TTD over a period that he had previously worked and offered to repay it. And as to PTD, the usual sequence was completely inapplicable. Claimant never worked after PTD was awarded. Concurrent payment occurred because the commission backdated the award over periods that claimant worked.

**{¶9}** There is considerable finger-pointing in this litigation. Try as they might, however, to deflect responsibility, the commission and bureau erred. They knew that claimant had worked sporadically between 1992 and 1995. Claimant never hid this. He volunteered this information to the bureau years earlier, and the file was replete with evidence of it. Despite this, appellees awarded PTD over periods of employment and ignored the TTD overpayment that claimant had tried to repay years before.

**{¶10}** Appellees stress that they knew of only some of claimant's jobs, implying that if they had known them all, the outcome would have been different. This argument is hollow. Some was enough. For our purposes, it matters not how many jobs claimant held over the relevant period. That he had *any* made total disability compensation improper over the corresponding period and should have raised questions as to the validity of the underlying medical evidence.

**{¶11}** The implication that claimant deliberately hid information is not a fair one. First, and again, there was ample evidence in the file to advise the commission. Second, we do not know that claimant did not reveal this information. The PTD statement of facts used by the adjudicating hearing officer has the handwritten notation "thirteen jobs—1992." We know that claimant did not have 13 jobs in 1992, but that he did have approximately 13 jobs *since* 1992. This suggests that claimant may have brought this information to the hearing officer's attention. Finally, claimant was unrepresented by counsel when PTD was awarded. If claimant did not volunteer this information, it may have been because claimant did not know that the commission had the ability to award compensation retroactively. Claimant may have thought that past work activity was irrelevant to his receipt of prospective benefits.

**{¶12}** In any event, claimant does not dispute the impropriety of concurrently receiving wages and disability benefits, nor is he endeavoring to keep that money. Rather, he contests (1) the declaration of fraud, (2) termination of further PTD, and (3) the declaration that *all* compensation for total disability was overpaid. Preliminary to all of this, of course, is an exploration of the commission's authority to revisit at all the issue of entitlement to compensation—i.e., whether continuing jurisdiction was properly invoked. For the reasons to follow, we find that continuing jurisdiction was inappropriate.

**{¶13}** The commission's continuing jurisdiction under R.C. 4123.52 is not unlimited. It must be precipitated by one of the following: (1) new and changed circumstances (*State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* [1979], 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383), (2) clerical error (*State ex rel. Weimer v. Indus. Comm.* [1980], 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149), (3) error by an inferior tribunal (*State ex rel. Manns v. Indus. Comm.* [1988], 39 Ohio St.3d 188, 529 N.E.2d 1379), (4) fraud (*State ex rel. Kilgore v. Indus. Comm.* [1930], 123 Ohio St. 164, 174 N.E. 345), or (5) clear mistake of law (*State ex rel. B & C Machine Co. v. Indus. Comm.* [1992], 65 Ohio St.3d 538, 605 N.E.2d 372).

**{¶14}** In our case, a clear mistake of law was indeed present. Receipt of both wages and total disability compensation for the same period is contrary to law. Even where a clear mistake exists, however, continuing jurisdiction must still be exercised within a reasonable time. *State ex rel. Gordon v. Indus. Comm.* (1992), 63 Ohio St.3d 469, 588 N.E.2d 852. Reasonableness, in turn, must be judged case by case. Here, six years passed between claimant's notification to the bureau of an overpayment of TTD and action by the commission or bureau. Four years passed between the granting of PTD and the commission's renewed interest in claimant's eligibility. Given this evidence in the file before the PTD hearing and contemporaneous with receipt of TTD, continuing jurisdiction cannot be considered to have been timely. *Gordon* supports this conclusion.

{¶15} Gordon also received concurrent wages and TTD. For over three years, the bureau and commission proposed various amounts of overpayment. On December 27, 1984, a district hearing officer established the amount at $4,455. The bureau did not appeal, and claimant repaid the amount.

{¶16} In May 1985, the bureau contacted the district hearing officer, questioning his calculation. The district hearing officer, in turn, reset the matter for hearing. A second district hearing officer then declared the matter res judicata. Again, the bureau did not appeal.

{¶17} In August 1988, the bureau moved the commission to exercise its continuing jurisdiction and vacate the district hearing officer's order. The commission did so and increased the declared amount of overpayment, claiming that even legitimately paid installments of compensation had been paid in the wrong amount. Claimant challenged the determination.

{¶18} The court of appeals held that the commission had abused its discretion by exercising continuing jurisdiction in an untimely manner. We agreed, finding that the four-year delay between the initial district hearing officer and the bureau's motion to vacate was not reasonable:

{¶19} "Three dates are key here: (1) December 27, 1984—the date of the district hearing officer's overpayment calculation; (2) May 22, 1987—the date on which another district hearing officer found the overpayment question to be *res judicata*; and (3) August 30, 1988—the date of the bureau's motion to vacate. As to the first date, we reiterate that when the district hearing officer issued his December 1984 order, other evidence suggested that the district hearing officer's figure was wrong. The bureau, however, did not appeal the district hearing officer's order. Moreover, in the two and one-half years between that order and the May 22, 1987 follow-up, the commission made no effort to exercise its continuing jurisdiction.

{¶20} "Similarly, when a different district hearing officer found the overpayment issue to be *res judicata* in 1987, the commission and bureau had three additional overpayment calculations before it, including its *own* tentative *order*

setting the overpayment at $6,051.94. Again, the bureau did not appeal. Again, no immediate effort to exercise continuing jurisdiction was made. Instead, the bureau waited over 15 months before acting.

**{¶21}** "In summary, the bureau had *two* opportunities to appeal district hearing officer orders addressing the overpayment question. Ignoring these opportunities, the commission waited approximately four years—until claimant had repaid the $4,455 that the unappealed district hearing officer's 1984 order had stated that she owed—to exercise continuing jurisdiction. Under these circumstances, the commission did not exercise its authority within a reasonable time time." Id., 63 Ohio St.3d at 472-473, 588 N.E.2d at 852.

**{¶22}** The present case, like *Gordon*, covered a considerable span of time. Similarly, in each case, the commission and bureau had ample opportunity to have acted sooner, but did not. In fact, had the evidence been more closely reviewed, the situation could have been avoided entirely. For these reasons, we find that continuing jurisdiction was not exercised within a reasonable time and was therefore improper.

**{¶23}** Accordingly, we find that the commission abused its discretion in revisiting claimant's PTD entitlement, terminating his PTD award, and declaring all compensation after June 1, 1992, to be overpaid as the result of fraud. The judgment of the court of appeals is hereby reversed. We hereby order the commission to vacate its order.

Judgment reversed

and writ granted.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

―――――――――――

Altick & Corwin Co., L.P.A., Deborah J. Adler and John A. Cervay, for appellant.

Betty D. Montgomery, Attorney General, and Gerald H. Waterman, Assistant Attorney General, for appellees.